IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEWART ARNOLD, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | NO. 16-4103 |
| Defendants. | : | |

**MEMORANDUM OPINION**

**TIMOTHY R. RICE**                                                                      **May 31, 2017**
**U.S. MAGISTRATE JUDGE**

Defendant Police Officer Jimmy Gist moves for judgment on the pleadings (doc. 46),

contending that Plaintiff Stewart Arnold's Amended Complaint (doc. 44) fails to adequately state

claims of unlawful search and seizure, false arrest, false imprisonment, and malicious

prosecution. See Am. Cplt. at 17, 20, 22, 24, 26; Resp. (doc. 54). I agree. Although he was

permitted to amend his complaint following discovery, Arnold fails to plead plausible claims

against Gist. In the alternative, Gist is entitled to qualified immunity. I dismiss all counts

against Gist.

**Factual Background**

Arnold alleges Fourth and Fourteenth Amendment violations against the City of

Philadelphia and several individual police officers based on his 2014 arrest and incarceration

until February 2016, when charges against him were dropped. Assuming that all facts Arnold

alleges are true, on July 10, 2014, Arnold was arrested by Officers Mouzon and Towman after

being observed inside the rear portion of a residence located at 2607 North Hollywood Street

during the execution of a search warrant at the residence. Am. Cplt. at ¶ 39. Gist participated in

the execution of the search warrant but not the arrest. Id. at ¶ 35.

Arnold was charged with possessing illegal drugs and firearms found inside 2607 North Hollywood Street. MC-51-CR-23192-2104 ("Crim. Dkt.") at 2. No illegal drugs, contraband, or pre-recorded bills were found on Arnold, and the residence listed on Arnold's driver's license was not 2607 North Hollywood Street. Id. at ¶¶ 40, 42. Arnold told the officers, at the time of his arrest, that he had never resided at 2607 North Hollywood Street. Id. at ¶ 42.

During the arrest, Officers McKnight and Towman threw Arnold to the ground without provocation, lacerating his right hand. Id. at ¶¶ 132-33. McKnight then falsely stated in his arrest report that Arnold had been found in possession of a key to 2607 North Hollywood Street, and Mouzon falsely stated on another police document that Arnold was known to reside there. Id. at ¶¶ 44-45. Arnold alleges Gist knew, or should have known, about those material misrepresentations. Id. at ¶ 46. He alleges no facts to support that claim.

Arnold contends Gist is liable for his injuries because the search warrant Gist helped execute was "defective on its face" and Gist "reviewed or should have reviewed" it, id. at ¶¶ 36-37, though Gist was not the affiant and was not mentioned in the warrant. McKnight secured the search warrant, which bears the seal of a Philadelphia magistrate and includes an Investigation Report that attaches McKnight's sworn statement of probable cause. Id. at ¶ 28; Search Warrant 181310, attached as Exhibit C to Gist's Motion (doc. 46-1) at 53-55. The Investigation Report describes two controlled illegal drug purchases made at 2607 North Hollywood Street by a confidential informant in coordination with McKnight, Mouzon, and Officer Eleazer the day before the search. Id. at 55. There is no allegation that Gist participated in the controlled buys.

Finally, Arnold claims that a state and federal investigation initiated in 2009 concluded that members of the Philadelphia Police Department Narcotics Field Unit "routinely" falsified search warrant affidavits. Am. Cplt. at ¶ 70. Gist and McKnight retired in October 2015, and

Arnold alleges Gist retired because he faced disciplinary proceedings following an internal affairs investigation of the Narcotics Field Unit. <u>Id.</u> at ¶¶ 59-60. Arnold further alleges the Philadelphia District Attorney's Office began dismissing cases involving Gist after reports of the internal investigation and Gist's and McKnight's retirements became public. <u>Id.</u> at ¶ 62.

## Legal Standard

When reviewing a motion for judgment on the pleadings, "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" that serve as the basis of a claim can be considered. <u>Mayer v. Belichick</u>, 605 F.3d 223, 230 (3d Cir. 2010); <u>see also</u> <u>Turbe v. Government of Virgin Islands</u>, 938 F.2d 427, 428 (3d Cir. 1991) (Fed. R. Civ. Pro. 12(c) motions are reviewed like Fed. R. Civ. Pro. 12(b)(6) motions). The first step is to separate the factual and legal averments. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). The legal averments are then set aside and the factual averments are analyzed to determine whether they constitute a "plausibl[e]," not merely possible, claim. <u>Robinson v. Family Dollar, Inc.</u>, No. 15-3736, 2017 WL 532243, at *3 (3d Cir. Feb. 9, 2017).

The factual averments against Gist are:

1) Gist was present when a search warrant was executed at 2607 North Hollywood Street on July 10, 2014. Am. Cplt. at ¶ 35.

2) Gist reviewed the search warrant before executing it. <u>Id.</u> at ¶ 36.

3) Had Gist reviewed the search warrant before executing it, he would have known it was defective on its face. <u>Id.</u> at ¶ 37.

4) At the time of Arnold's arrest, Gist made no good faith investigative effort to determine whether Arnold was a visitor or resident of 2607 North Hollywood Street. <u>Id.</u> at ¶ 41.

5) Arnold told Gist he did not live at 2607 North Hollywood Street. <u>Id.</u> at ¶ 42.

6)      Gist knew that McKnight made material misrepresentations about Arnold on his arrest paperwork. Id. at ¶ 46.

7)      Gist knew there was no probable cause to believe that Arnold lived at 2607 North Hollywood Street or had any knowledge of, or control over, the drugs found there. Id. at ¶ 51.

8)      Gist knew the affidavit of probable cause did not identify Arnold as the person who sold illegal drugs to the confidential informant. Id. at ¶ 53.

9)      Gist voluntarily retired around October 2015 to avoid facing disciplinary proceedings for misconduct. Id. at ¶ 60.

10)     The Philadelphia District Attorney's office started dismissing cases in which Gist had been involved after reports of a Narcotics Field Unit internal investigation and Gist's retirement were published. Id. at ¶ 62.

Arnold asserts four claims against Gist: (1) unlawful search and seizure (Count IV), Am. Cplt. at 17-20; (2) false arrest (Count V), id. at 20-21; (3) false imprisonment (Count VI), id. at 22-23; and (4) malicious prosecution (Count VII), id. at 24-25.

Unlawful search and seizure

Arnold states two theories for this § 1983 claim, alleging that the search warrant was "deficient on its face," and that Gist was aware police "lacked sufficient probable cause" to search 2607 North Hollywood Street when he "acted in concert and conspiracy" with McKnight and Mouzon, who fabricated the confidential informant and controlled buys described in the affidavit of probable cause. Id. at ¶¶ 88, 95, 101.

The Fourth Amendment protects citizens "against all unreasonable searches" by requiring, and establishing minimum requirements for, search warrants. See U.S. Const. Amend. IV; Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). A valid search warrant must contain: (1) a showing of probable cause; (2) a sworn affidavit in support; (3) a sufficiently particular description of the place to be searched; and (4) a sufficiently particular description of the persons or items to be seized. Groh v. Ramirez, 540 U.S. 551, 557 (2004). A search warrant

that meets these four requirements can still violate the Fourth Amendment if it was based on a false affidavit and: (1) the false statements were made deliberately; and (2) the false statements were necessary to the finding of probable cause. Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)).

To state a § 1983 claim against individual officers, the complaint must allege that each officer, "through [his] own actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Those actions can include a defendant police officer's failure to intervene in the unconstitutional activity of another officer if the defendant officer (1) observed the other officer violating a citizen's constitutional rights; and (2) had a reasonable opportunity to intervene but failed to do so. Goldwire v. City of Philadelphia, 130 F. Supp. 3d 936, 942 (E.D. Pa. 2015) (citing Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002)).

Arnold fails to challenge the power of the issuing authority of the search warrant, the existence or wording of the affidavit, or the particularity of the premises or items sought. Arnold, therefore, has not alleged sufficient facts to show that either the search warrant was facially deficient, Groh, 540 U.S. at 557, or that Gist "knew or should have known" the warrant was invalid. Am. Cplt. ¶ 95.

Even assuming, as Arnold claims, that the warrant was based on fabricated probable cause, see id. at ¶¶ 51-53, 76, 81, 90, Arnold fails to plead an act or omission by Gist that shows he was aware of such wrongdoing. Iqbal, 556 U.S. at 676. Arnold does not allege that Gist participated in the fraudulent controlled buys or fabricated the search warrant's probable cause affidavit. Instead, he sets forth only the legal conclusion that Gist "acted in concert and conspiracy" with the officers who allegedly falsified the search warrant documents. Am. Cplt. at ¶ 104. The only facts pled in support of his theory are the timing and circumstances of Gist's

retirement and the District Attorney's dismissal of unidentified cases allegedly connected to Gist. Id. at ¶¶ 60, 62.

Conspiracy can serve as a "mechanism for subjecting co-conspirators to liability" for each other's actions, Beck v. Prupis, 529 U.S. 494, 503 (2000), but "a plaintiff must assert facts from which a conspiratorial agreement can be inferred." Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010). "Without more, parallel conduct does not suggest conspiracy." Bell Atlantic Corp. v. Twombly, 550 U.S. 533, 553 (2007). Generally, plaintiffs are required to plead the time period, object, and concrete actions taken in furtherance of an alleged conspiracy to adequately state a claim. Great Western Mining, 615 F.3d at 179.

Arnold fails to plead the time period of the alleged conspiracy. He alleges only that Gist retired "around" the time of the investigation and that the investigation was "subsequent" to his retirement. Am Cplt. at ¶¶ 60, 62. In addition, Arnold's Amended Complaint fails to state whether more than one conspiracy existed. It references both an October 2015 internal affairs investigation and a 2009 state and federal investigation of the Narcotics Field Unit. The complaint, however, fails to provide any information about either investigation's time frame, result, or whether they addressed the same conduct. Am. Cplt. at ¶¶ 61, 69.

Arnold fails to allege any facts connecting Gist to either investigation. See Am. Cplt. at ¶ 60; Twombly, 550 U.S. at 553. With respect to the state and federal investigation, there are no allegations linking Gist to the alleged target, Cujdik. With respect to the internal affairs investigation, there are no allegations linking Gist to any confidential informant. Arnold has failed to allege adequate facts to infer that Gist was included in a conspiratorial agreement that resulted in Arnold's arrest. Great Western Mining, 615 F.3d at 178. The minimal facts alleged

regarding the timing of Gist's retirement and the District Attorney's actions are insufficient to "nudge his claims across the line from conceivable to plausible." Twombly, 550 U.S. at 557.

Because Arnold has failed to sufficiently allege in Count IV that the search warrant was deficient on its face and that Gist was part of a conspiracy to fraudulently obtain the warrant, he has not stated a plausible claim against Gist for failing to intervene in the warrant's execution.

### False arrest and False imprisonment

To plead a claim of false arrest or false imprisonment, a plaintiff must allege: (1) an arrest or detention (2) made without probable cause. Ballister v. Union County Prosecutor's Homicide Task Force, No. 15-7655, 2017 WL 825217, at * 6 (D.N.J. March 2, 2017) (citing James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012)); see also Barrios v. City of Philadelphia, 95 F. Supp. 3d 523, 534 (E.D. Pa. 2015) (elements of false arrest and false imprisonment claims are identical).

Arnold alleges the officers knew or should have known that they lacked probable cause to arrest him because they "had no probable cause to believe [he] resided at 2607 North Hollywood Street, or had any knowledge or control over any of the drugs or contraband." Am. Cplt. at ¶ 49; see also id. ¶ 107. Arnold asserts he told Gist and the other officers that he did not live at that address, that the address was not listed on his license, and none of his items were recovered from the search of that address. Id. ¶¶ 42, 47-48. He also claims that McKnight and Mouzon made knowing misrepresentations about his connection to the address in their arrest report. Id. ¶¶ 44, 45.

Arnold, however, does not allege that Gist arrested him or improperly completed the arrest report. Am. Cplt. at ¶¶ 39, 44, 45. Instead, he contends Gist knew, or should have known, about the misrepresentations made by McKnight and Mouzon because all the officers acted in

7

concert and conspiracy.  Id. at ¶¶ 46, 104.  Arnold fails to allege any facts to support his claim of

a conspiracy between Gist and the other officers.  Further, the other officers arrested Arnold after

finding him in the same location where drug transactions were known to have taken place and

discovering a substantial amount of illegal drugs.  Under those circumstances, it would have

been reasonable for Gist to believe the officers had probable cause to arrest Arnold.  See

Williams v. Atl. City Dep't of Police, No. 08-4900, 2010 WL 2265215, at *3 (D.N.J. June 2,

2010) (reasonable officer could have concluded he had probable cause to arrest plaintiff based on

his presence in an apartment, in which he executed a search warrant and found drugs and other

contraband, and which it appears was the location of frequent drug sales).

Arnold has failed to state a claim of false arrest or false imprisonment against Gist in

Counts V and VI.  James, 700 F.3d at 680.

Malicious prosecution

To state a claim for malicious prosecution, Arnold must plead that (1) Gist instituted

proceedings against him (2) without probable cause, (3) with malice, and (4) that the proceedings

were terminated in Arnold's favor.  Berrios, 96 F. Supp. 3d at 534.

Gist was not one of the arresting officers, and Arnold has failed to plead that Gist

instituted proceedings against him.  Am. Cplt. at ¶ 39.  Further, Arnold has failed to state a claim

of malicious prosecution based on Gist's failure to intervene because he has failed to plead facts

that plausibly claim Gist was part of the alleged conspiracy.

Count VII against Gist must be dismissed as well.

Qualified Immunity

In the alternative, Gist is entitled to qualified immunity for all four claims.

Qualified immunity protects all government officials "from civil damages liability unless [they] violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Bag of Holdings, LLC v. City of Philadelphia, No. 16-1808, 2017 WL 1032260, at *2 (3d Cir. Mar. 16, 2017) (citing Reichle v. Howards, 566 U.S. 658 (2012)). Only "plainly incompetent" government officials or "those who knowingly violate the law" are unprotected. Id. (citing Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015)). To determine whether a police officer or other official is entitled to qualified immunity, courts must determine: (1) whether the facts alleged show a constitutional violation, and (2) whether the right violated was clearly established at the time of the violation. Pearson v. Callahan, 555 U.S. 223, 242 (2009) (citing Saucier v. Katz, 533 U.S. 194 (2001)).

Arnold has failed to plead sufficient facts to plausibly claim Gist was liable under any legal theory. Without actual knowledge of the other officers' alleged illegal acts, Gist could not have been expected to know that the search warrant and arrest were unlawful. See Pearson, 555 U.S. at 244 ("[t]he principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law"); Iqbal, 556 U.S. at 685 (it is especially important to dismiss insufficiently pled claims against defendants entitled to assert qualified immunity); Williams, 2010 WL 2265215, at *3. Because Arnold has failed to adequately plead facts that show Gist should not have believed his conduct complied with the law, Counts IV through VII should be dismissed against him on this alternative basis as well.

An appropriate Order follows.